HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>     v.<br><br>TERRANCE R. SUDBURY,<br><br>                     Defendant. | No. 11-cr-5536 RBL<br><br>ORDER DENYING MOTION TO DISMISS<br><br>[Dkt. #31] |

     Terrance Sudbury was convicted of three sex offenses in 1994–97, and following release, he was required to register as a sex offender in Oregon. The Government alleges that Mr. Sudbury travelled to Washington in May 2009 and failed to register, thereby violating the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq*. Congress passed SORNA in 2006, after Mr. Sudbury's predicate crimes, but before the alleged failure to register that brings him before the Court now. When it was passed in 2006, SORNA allowed the Attorney General "the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted *before* the enactment . . . ." 42 U.S.C. § 16913(d) (emphasis added). Mr. Sudbury asserts that Congress, in granting the Attorney General the authority to determine whether SORNA applied to pre-Act offenders, unconstitutionally delegated its legislative powers. Mr. Sudbury requests dismissal.

     Because SORNA contains an intelligible principle guiding the Attorney General, Congress did not impermissibly delegate its constitutionally-mandated powers, and the Court denies the motion.

Order - 1

# I. FACTUAL BACKGROUND

The facts relating to Mr. Sudbury are simple. In 1994, 1995, and 1997, Mr. Sudbury was sentenced by the Multnomah County Circuit Court to terms of imprisonment for four separate sexual offenses, including sex abuse and rape. The Government asserts that sometime between May 2009 and May 2011, Mr. Sudbury travelled in or resided in Clark County, Washington, and knowingly failed to register. *See* Compl. at 1.

The facts relating to SORNA are a bit lengthier. Congress enacted SORNA on July 27, 2006, to "establish[] a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901 ("Declaration of Purpose"). SORNA specifies the predicate crimes requiring registration, *id.* § 16911, when and how an offender must register, *id.* § 16913, and the information the offender must give, *id.* § 16914. Criminal liability is created by 18 U.S.C. § 2250(a), which penalizes a sex offender who travels in interstate or foreign commerce and who knowingly fails to register or update registration as required by SORNA.

Two subsections govern the timing of SORNA's application. Under §16913(b):

> The sex offender shall initially register—
> (1) before completing a sentence of imprisonment . . . [or]
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

42 U.S.C. §16913(b) ("Initial Registration"). Thus, a sex offender must register before leaving prison, or if the offender received no term in prison, then within three days of sentencing. Subsection (d), tackles the issue of sex offenders who are "unable to comply with subsection (b)" (presumably because they have already been released, but were not required to or simply did not register under previous law):

> The Attorney General ***shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment*** of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders ***who are unable to comply with subsection (b)***.

*Id.* § 16913(d) ("Initial registration of sex offenders unable to comply with subsection (b)") (emphasis added). The intertwined operation of subsections (b) and (d) has given rise to Mr. Sudbury's argument that Congress impermissibly delegated its legislative power to the Attorney General.

Order - 2

## II. DISCUSSION

The Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const., Art. 1, § 1. That grant is also a mandate: "Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (citing *Field v. Clark*, 143 U.S. 649, 692 (1892)). When determining how Congress may seek assistance from another branch, "the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the government co-ordination." *Id.* (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406 (1928)). Congress's delegation is proper if it contains "an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform . . . ." *Id.* (quoting *J.W. Hampton*, 276 U.S. at 409) (internal alterations omitted).

The "intelligible principle test" (a somewhat ironic name for such an amorphous standard) tends to be read broadly by courts. For example, in *Yakus v. United States*, 321 U.S. 414, 426 (1944), the Supreme Court upheld a delegation to a price administrator to fix commodity prices that would be "fair and equitable." In *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 600 (1944), the Court upheld a delegation to the Federal Power Commission to determine "just and reasonable rates." In *National Broadcasting Co. v. United States*, 319 U.S. 190, 225–26 (1943), it was a delegation to the FCC to ensure that broadcast licenses were granted as "the public interest, convenience, or necessity require." While broadly written, Congress must necessarily rely on these types of principles. The very purpose of delegation is to rely on the expertise of an agency or other government actor to resolve "ever changing and . . . technical problems." *Id.* at 373.

This Court is not the first to address the delegation issue arising in SORNA's subsection (d). In *United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010), *cert. denied*, 130 S. Ct. 3487 (June 21, 2010), the Second Circuit held that SORNA's delegation of authority to the Attorney General was within constitutional bounds. The Second Circuit recognized two interpretations of § 16913(d)—one narrow, one broad. Under the narrow interpretation, "§16913(d) does not commit any authority to the Attorney General with regard to sex offenders who were convicted

prior to SORNA's enactment *and who were already initially registered* as sex offenders with their respective states." *Id.* at 92 (emphasis added). In other words, pre-Act sex offenders that had already registered in their states had already complied with subsection (b), and thus, any grant of discretion by SORNA to the Attorney General did not apply. Thus, a pre-Act sex offender who had registered lacked standing to challenge any supposed delegation of authority. *Id.*

Under the broad reading—the reading urged by Mr. Sudbury—any sex offender convicted and released from prison before SORNA, or who did not receive a prison term, is "unable" to comply with the registration requirements. Mr. Sudbury's reading appears correct in light of the Supreme Court's analysis in *Reynolds v. United States*, 132 S. Ct. 975 (2012), and the Ninth Circuit's in *United States v. Valverde*, 628 F.3d 1159 (9th Cir. 2010). In *Reynolds*, the Court held that SORNA's "registration requirements do not apply to pre-Act offenders until the Attorney General so specifies." *Reynolds*, 132 S. Ct. at 984. And in *Valverde*, the Ninth Circuit held that it was the Attorney General's promulgation of a final rule in August 2008, rather than the interim rule of February 2007, that made SORNA applicable to pre-Act offenders (like Mr. Sudbury).[1] Under this reading, *all* sex offenders released from prison before SORNA are "unable to comply," and thus, fall under the umbrella of the Attorney General's discretion. Only those sex offenders still in prison at the time of SORNA's enactment, and those convicted after, fall outside the Attorney General's discretion.

In sum, a huge proportion of sex offenders[2] fall under subsection (d) (i.e., under the Attorney General's discretionary application). Indeed, the only offenders immediately able to comply with SORNA were those still in prison or those convicted after enactment.

---

[1] *Reynolds* and *Valverde*, while tangentially relevant, hold no direct bearing on this case—Mr. Sudbury's alleged conduct indisputably occurred after the Attorney General promulgated the final rule.

[2] The Second Circuit reasoned that if SORNA applied "retroactively," it would do so "only with respect to the limited class of individuals who were convicted of covered sex offenses prior to SORNA's enactment." *Guzman*, 591 F.3d at 93. While this is indeed a "limited class" in the sense that it is not the entire class, it is hardly "limited" in the sense of "small." The Supreme Court in *Reynolds* noted that large swaths of sex offenders were unregistered and that SORNA's congressional supporters "placed considerable importance upon the registration of pre-Act offenders." *Reynolds*, 132 S. Ct. at 982 (quoting H.R. Rep. No. 109–218, pt. 1, p. 24 (2005) ("[Twenty] percent of sexual offenders are 'lost,' and there is a strong public interest in finding them and having them register with current information to mitigate the risks of additional crimes against children"); 152 Cong. Rec. 15333 (2006) (statement of Sen. Cantwell) ("Child sex offenders have exploited this stunning lack of uniformity, and the consequences have been tragic. Twenty percent of the Nation's 560,000 sex offenders are 'lost' because State offender registry

If Mr. Sudbury were correct, and SORNA allowed the Attorney General to exempt pre-Act offenders, the new registration system would have excluded a large number—likely the majority—of convicted sex offenders. This would hardly have been the "comprehensive national system" mandated. 42 U.S.C § 16901. Indeed, it is Congress's mandate that the Attorney General establish a "comprehensive" system that serves as the intelligible principle limiting the Attorney General's discretion. *See U.S. v. Ambert*, 561 F.3d 1202, 1214–15 (11th Cir. 2009) ("By setting forth the broad policy goal of . . . a 'comprehensive' national registry, Congress has suggested that the Attorney General should require pre-2006 sexual offenders to register to the extent that he determines it would contribute to the protection of the public and the comprehensiveness of a national sex offender registry."); *see also U.S. v. Whaley*, 577 F.3d 254, 263–64 (5th Cir. 2009) (holding that SORNA delegation was constitutionally permissible). Congress recognized that combining the registry systems of 50 states presented "precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate." *Mistretta*, 488 U.S. at 379. In light of that intricate logistical problem, Congress granted the Attorney General the discretion to determine when and how SORNA would apply to pre-Act offenders. The idea that the Attorney General could create a comprehensive system without applying SORNA to pre-Act offenders is quite simply wrong.[3] To exempt all pre-Act offenders, the Attorney General would have had to ignore Congress's mandate to create a comprehensive system. This principle is sufficiently intelligible to limit the Attorney General's discretion.

As the Second Circuit found in *Guzman*, the "Attorney General's authority under SORNA is highly circumscribed," and the Act does not violate the non-delegation principle.

---

programs are not coordinated well enough"); *id.*, at 15338 (statement of Sen. Kyl) ("There currently are over 100,000 sex offenders in this country who are required to register but are 'off the system.' They are not registered. The penalties in this bill should be adequate to ensure that these individuals register"); *id.*, at 13050 (statement of Sen. Frist) ("There are currently 550,000 registered sex offenders in the U.S. and at least 100,000 of them are missing from the system. Every day that we don't have this national sex offender registry, these missing sex predators are out there somewhere"). If one-fifth of the sex offender population was unregistered, and presumably a much greater number had already been released, then SORNA effectively categorizes a large percentage of potential sex offenders as "pre-Act offenders" and subject to the Attorney General's discretion. This is not, therefore, a "limited class" in the sense of a "small" group.

[3] The Supreme Court tactfully called it an "unrealistic possibility," and noted that "there is no reason to believe that Congress feared that the Attorney General would refuse to apply the new requirements to pre-Act offenders." *Reynolds*, 132 S. Ct. at 984.

## III. CONCLUSION

Because Congress provided an intelligible principle to limit the Attorney General's discretion, and any grant of discretion was therefore a constitutionally-acceptable delegation, the Court **DENIES** the motion to dismiss the indictment. [Dkt. # 31].

Dated this 19th day of March 2012.

*/s/ Ronald B. Leighton*
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE